## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TWO OLD HIPPIES, LLC,

        Plaintiff,

vs.                                          No. CIV 10-0459 JB/RLP

CATCH THE BUS, LLC, GARY MACK
and FALLON MACK,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss, filed June 23, 2010 (Doc. 7)("Motion").  The Court held a hearing on January 12, 2010.  The primary issues are: (i) whether Plaintiff Two Old Hippies, LLC, has adequately sets forth factual allegations showing that Defendants Gary Mack and Fallon Mack (together "Individual Defendants") and Catch the Bus, LLC (collectively "Defendants") misrepresented the condition of two Volkswagen Buses that Two Old Hippies purchased from the Defendants under rule 9(b) of the Federal Rules of Civil Procedure; (ii) whether Two Old Hippies has adequately pled its claims under rule 8(a); (iii) and whether Two Old Hippies has alleged facts establishing individual liability on behalf of the Individual Defendants.  The Court grants in part and denies in part the Defendants' Motion to Dismiss, dismissing all claims against the Individual Defendants and Two Old Hippies' claim under the Colorado Consumer Protection Act C.R.S., §§ 6-1-101 through 6-1-115 ("CCPA") -- Count V -- against all Defendants.

### FACTUAL BACKGROUND

This matter concerns Two Old Hippies' purchase of two restored Volkswagen Buses from

the Defendants.  The following facts are taken from Two Old Hippies' Complaint, which the Court treats as true for the purposes this Motion.

In July of 2009, Two Old Hippies ordered a customized 1965 Volkswagen Bus (Bus #1) from Catch the Bus for $41,424.00.  In October of 2009, Two Old Hippies ordered an additional customized Volkswagen Bus (Bus #2) from Catch the Bus for $33,624.00.  The Defendants guaranteed Two Old Hippies one-hundred percent satisfaction with the buses ("the guarantee"), and that the buses would be "ready to go" on delivery "whether for daily driver or for cross-country trips" ("the promise").  Complaint for Breach of Contract, Breach of Warranty, Violation of the New Mexico Dealers Franchising Act, Violation of the New Mexico Unfair Practices Act, Violation of the Colorado Consumer Protection Act, Negligent Misrepresentation, and Rescission ¶¶ 13, 14 at 2, filed May 13, 2010 (Doc. 1)("Complaint").

On Bus #1, the Defendants overcharged Two Old Hippies $1,500.00 for air conditioning and $1,000.00 for snow tires, which were not provided.  Two Old Hippies planned to use Bus #1 in its business and to give away Bus #2 as part of a business promotion.  The Defendants knew of Two Old Hippies' plans for the buses.

Upon delivery, the buses were not safely operable and had many serious mechanical defects. Because of these issues, Two Old Hippies has been unable to use Bus #1, and Two Old Hippies had to reacquire Bus #2 from the winner of the business promotion for $33,624.00, making the total amount that Two Old Hippies has expended on the buses $108,672.00.  Two Old Hippies demanded refund of the purchase price and related compensation from the Defendants, and the Defendants have refused its demands.

## PROCEDURAL BACKGROUND

Two Old Hippies brings this diversity action, alleging claims under New Mexico state law for breach of contract -- Count I; breach of warranty -- Count II; violation of the New Mexico Motor Dealers Franchising Act, N.M.S.A. 1978, §§ 57-16-1 through 57-16-16 ("MVDFA") **--** Count III; violation of the New Mexico Unfair Trade Practices Act, N.M.S.A. 1978, §§ 57-12-1 through 57-12-26 ("UPA") -- Count IV; negligent misrepresentation -- Count VI; and rescission -- Count VII.  Two Old Hippies also brings a claim under Colorado law for a violation of the CCPA -- Count V.

On June 23, 2010, the Defendants -- through counsel -- filed their Answer to Complaint for Breach of Contract, Breach of Warranty, Violation of the New Mexico Dealers Frachising [sic] Act, Violation of the New Mexico Unfair Practices Act, Violation of the Colorado Consumer Protection Act, Negligent Misrepresentation, and Rescission.  See Doc. 6.  On June 28, 2010, the Defendants filed their Jury Demand.  See Doc. 9.  The Jury Demand requests a six-person jury.

On June 23, 2010, the Defendants filed their Motion, see Doc. 7, and Memorandum Brief in Support of Defendants' Motion to Dismiss, see Doc. 8 ("Memorandum").  The Individual Defendants move the Court to dismiss with prejudice all Counts against them individually pursuant to rule 12(b)(6), because they cannot be held personally liable for the actions of Catch the Bus based only on their positions as corporate officers.  The Defendants also move the Court to dismiss Counts II through VII under rule 12(b)(6), because they contend that Two Old Hippies has failed to state with particularity specific factual allegations establishing plausible claims under Counts II through VII, and that the claims should be dismissed.  The Defendants further contend that the Court should dismiss Counts III, IV, V, and VII, because Two Old Hippies does not plead the alleged

misrepresentation  in accordance with rule 9(b)'s pleading requirements.

On June 30, 2010, Two Old Hippies filed its Response in Opposition to Defendants' Motion to Dismiss [Doc. 7].  See Doc. 11.  Two Old Hippies opposes the Defendants' Motion, arguing that its Complaint adequately sets forth factual allegations to support its claims.  Two Old Hippies also asserts that the Defendants do not challenge the adequacy of Counts I or VI against Catch the Bus. Two Old Hippies further contends that its adequately pled facts implicating the Individual Defendants as directly participating in the acts on which it bases its claims.

On July 14, 2010, the Defendants filed their Reply to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss.  See Doc 14 ("Reply").  The Defendants concede that they do not move to dismiss Count I against Catch the Bus, but assert that they move to dismiss Count VI against Catch the Bus, because Two Old Hippies did not adequately plead facts to support the allegation.  The Defendants also contend that Two Old Hippies has not pled facts showing that the Individual Defendants were directly involved in the transaction, and that the Defendants cannot be held liable for contract violations or unintentional torts.

The Defendants did not appear at the January 12, 2010 hearing.  Two Old Hippies argued in support of denying the Motion.  The Court indicated that it was inclined to deny the Motion, but took the matter under advisement.

## LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(b)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint

is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 547, 570). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177. The United States Court of Appeals for the Tenth Circuit has stated:

"[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1974)(internal citations omitted).

### LAW REGARDING RULE 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Normally, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Fraud claims, however, must meet more stringent standards. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

With respect to rule 9(b)'s scope, a court should require parties to plead a cause of action with particularity when that cause of action contains allegations grounded in fraud. See 2 J. Moore, J. Parness & J. Smith, Moore's Federal Practice § 9.03(1)(d), at 9-20 (3d ed. 2008). On the other hand, claims based on negligent or innocent misrepresentation, to the extent those claims do not require proof of fraud, may be pled in accordance with the more relaxed standards of rule 8(a). See Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP, 475 F.3d 824, 833 (7th Cir. 2007) (recognizing that rule 9(b)'s heightened pleading standard does not apply to negligent misrepresentation claim); Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 395-96 (5th Cir. 2005)(concluding that negligent representation claim needs only satisfy notice pleading standard of Rule 8(a)); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104-05 (9th Cir. 2003)("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).");

Carl Kelley Const. LLC v. Danco Techs, 656 F. Supp. 2d 1323, 1346 (D.N.M. 2009)("[U]nlike with

fraudulent misrepresentation, rule 8's notice pleading standard governs [Negligent

misrepresentation]."   (citing City of Raton v. Ark. River Power Auth., 600 F. Supp.2d 1130,

1142-44, 1153 (D.N.M.2008)(Browning, J.))); J. Moore, J. Parness & J. Smith, supra § 9.03(1)(d),

at 9-21.

The primary motives that animate rule 9(b) help illuminate the reason for limiting the rule's

reach to claims grounded in fraud.  First, the requirement of pleading with particularity protects

defendants' reputations from the harm attendant to accusations of fraud or dishonest conduct.  See

Guidry v. Banks of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992)("[The particularity requirement]

stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to

defendant's reputation."); United States ex rel. Harrison v. Westinghouse Savannah River Co., 353

F.3d 908, 921 (4th Cir. 2003)("Rule 9(b) protects defendants from harm to their goodwill and

reputation.")(quotations and citations omitted).  Second, the requirement to plead with particularity

puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense.

See United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d at 921.  A related

goal of 9(b) is to prevent plaintiffs from tagging on specious fraud claims to their pleadings in an

attempt "to induce advantageous settlements or for other ulterior purposes."  Banker's Trust Co. v.

Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992).

The Tenth Circuit has fleshed out the components necessary to a successful 9(b) pleading.

In Sheldon v. Vermonty, 246 F.3d 682 (10th Cir. Dec. 4, 2000), the Tenth Circuit held that the

plaintiff alleged with specific particularity a violation of the Securities Exchange Act of 1934.  See

246 F.3d 68, at *4.  The Tenth Circuit concluded that the complaint

adequately met Rule 9(b) requirements.  First, as the district court acknowledged, the Complaint alleged misrepresentations with background information as to date, speaker, and the medium of communication. . . .  Second, certain of the alleged misrepresentations involved profitable expectations arising from an unowned and inoperable meat-packing plant, a nonexistent lumber company, and fabricated contracts.    Accepting Sheldon's allegations as true, these are patently false statements of present fact.  The district court erred in determining they were mere conclusory allegations of falsity and in characterizing them as fraud by hindsight. . . .  Third, the allegations of scienter were sufficient.  In securities fraud cases, although speculation and conclusory allegations will not suffice, great specificity is not required if the plaintiff alleges enough facts to support a strong inference of fraudulent intent.

246 F.3d 68, at * 5 (internal quotation marks and citations omitted).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  United States ex rel. Schwartz v. Coastal Healthcare Group, Inc., 232 F.3d 902, at * 3 (10th Cir. 2000).  "To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  Midgley v. Rayrock Mines, Inc., 374 F. Supp. 2d 1039, 1047 (D.N.M. 2005)(Browning, J.)(quoting Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997)).  "On the other hand, rule 9(b) does not require specific knowledge regarding the defendant's state of mind."  Midgley v. Rayrock Mines, Inc., 374 F. Supp. 2d at 1047.

## ANALYSIS

The Defendants move the Court to dismiss all Counts against the Individual Defendants, and Counts II through VII against Catch the Bus.  The Defendants contend that Two Old Hippies has failed to plead its claims with sufficient factual specificity under rule 8(a) and rule 9(b).  Two Old Hippies responds that it has adequately pled its claims.  The Court agrees that Two Old Hippies has adequately pled its claims, with the exception of Two Old Hippies' CCPA claim against Catch the Bus, with adequate factual specificity to meet the requirements of rule 8(a) and rule 9(b).  The Court

concludes, however, that Two Old Hippies has not pled facts showing that the Individual Defendants are personally liable for the claims.

## I.   TWO OLD HIPPIES SATISFY RULE 9(b)'S REQUIREMENTS.

The Defendants contend that Two Old Hippies fails to plead the alleged fraudulent misrepresentations with adequate factual particularity in accordance with rule 9(b)'s requirements. Based on this contention, the Defendants assert that Counts III, IV, V, VI, and VII fail.  Two Old Hippies respond that the Complaint sets forth in sufficient detail allegations of the Defendants' fraudulent misrepresentations.

The Court agrees that the Complaint adequately states the alleged misrepresentation.  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  United States ex rel. Schwartz v. Coastal Healthcare Group, Inc., 232 F.3d 902, at *3.  See Midgley v. Rayrock Mines, Inc., 374 F. Supp. 2d at 1047 ("To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" (quoting Schwartz v. Celestial Seasonings, Inc., 124 F.3d at 1252)).  "On the other hand, rule 9(b) does not require specific knowledge regarding the defendant's state of mind."  Midgley v. Rayrock Mines, Inc., 374 F. Supp. 2d at 1047.  Counts III, IV, V, and VII of the Complaint are predicated upon allegations that the Defendants willfully and intentionally made misrepresentations of fact to Two Old Hippies.  Count III alleges a violation of the MVDFA, which defines fraud as: "(1) a misrepresentation in any manner, whether intentionally false or due to gross negligence, of a material fact; (2) a promise or representation not made honestly and in good faith; and (3) an intentional failure to disclose a material fact."  Salmeron v. Highlands Ford Sales, Inc., 271 F. Supp.

2d 1314, 1319 (D.N.M. 2003)(Vazquez, J.)(quoting NMSA 1978 § 57-16-4C).   Count IV alleges that the Defendants violated the New Mexico Unfair Trade Practices Act, N.M.S.A. 1978, §§57-12-2, 57-12-6, because they represented that the buses were of a particular standard, quality or grade -- willfully misrepresenting the condition of the buses.   Count V of the Complaint alleges a violation of the Colorado Consumer Protection Act, C.R.S. §6-1-105(g), which includes as a deceptive trade practice the representation that goods are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if one "knows that they are of another."   Count VI alleges that the Defendants' guarantee and promise were material false misrepresentations of fact negligently made to Two Old Hippies.[1]   Count VII of the Complaint alleges that the Defendants misrepresented material facts, which warrants the rescission of the purchase contracts.

Two Old Hippies adequately pleads the alleged misrepresentation in the Complaint.   The Complaint alleges that the Defendants told Two Old Hippies that the buses would be "'ready to go' on delivery 'whether for daily driver or for cross-country trips,'" and that Two Old Hippies would be "100%" satisfied with them.   Complaint ¶¶ 13, 14, at 2.   The Complaint alleges that these statements were made as "part of the contracts," which were entered in July and October 2009. Compliant ¶¶ 9, 11, 13, 14, at 2.   The Complaint also alleges that the misrepresentations were made in "bad faith."   Complaint ¶ 52, at 6.   See Midgley v. Rayrock Mines, Inc., 374 F. Supp. 2d at 104 ("[R]ule 9(b) does not require specific knowledge regarding the defendant's state of mind.").   The

---

[1] Count VI alleges negligent misrepresentation, which falls under rule 8(a)'s less stringent pleading standard.   See Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP, 475 F.3d at 833; Gen. Elec. Capital Corp. v. Posey, 415 F.3d at 395-96; Vess v. Ciba-Geigy Corp. USA, 317 F.3d at 1104-05.   Because the allegations of misrepresentation satisfy rule 9(b)'s heightened pleading standard, they necessarily satisfy rule 8(a).   Cf.  Neubronner v. Milken, 6 F.3d 666, 673 (9th Cir. 1993).

Complaint also states that the "buses were not 'ready to go' on delivery 'whether for daily driver or for cross-country trips,'" Complaint ¶ 16, at 2, because they were not "safely operable and TOH determined that Bus # 1 had many serious mechanical and physical defects" and "that Bus # 2 was not operable and had many serious mechanical and physical defects." Complaint ¶¶ 19, 21, at 3. The Complaint thus states what was said, by whom, approximately when and in what context. This factual particularity satisfies rule 9(b)'s pleading requirements.

## II.   TWO OLD HIPPIES HAS STATED A BREACH OF WARRANTY CLAIM -- COUNT II.

Count II alleges that the Defendants breached express and implied warranties for two Volkswagen Buses, which Two Old Hippies ordered from the Defendants. The Defendants contend that Two Old Hippies fails to state a claim for breach of warranty in Count II. The Defendants assert that Two Old Hippies fails to plead sufficient factual particularity to show the existence of an express warranty and breach, or an implied warranty of fitness and breach. Two Old Hippies responds that the Complaint provides adequate facts to show a breach of an express and implied warranty. The Court agrees that the Complaint states a claim for breach of express and implied warranties.

### A.   TWO OLD HIPPIES HAS STATED A CLAIM FOR BREACH OF EXPRESS WARRANTY.

An express warranty is created when a seller makes an "affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." NMSA 1978, § 55-2-313(1)(a). N.M.S.A. 1978, § 55-2-313(1)(a) and (b) provides that a seller creates express warranties through "affirmation[s] of fact or promise[s] to the buyer which relate[ ] to the goods and become part of the basis of the bargain," and through "description[s] of the goods which is made part

of the basis of the bargain."  "Even if the representative's statement amounted to an opinion, the opinion amounts to a warranty if the statement became a part of the basis of the bargain." Lovington Cattle Feeders, Inc. v. Abbott Labs., 97 N.M. 564, 567, 642 P.2d 167, 172 (1982)(citing N.M.S.A. 1978, § 55-2-313 cmt. 8).

The Complaint states that: (i) in July and October of 2009 Two Old Hippies contracted to purchase two restored Volkswagen buses from Catch the Bus, Complaint ¶¶ 9, 11, at 2; (ii) "[t]he CTB Defendants guaranteed TOH 100% satisfaction with the buses ('guarantee') which was a part of the contracts," Complaint ¶ 13, at 2; (iii) "[t]he CTB Defendants promised that the buses would be 'ready to go' on delivery 'whether for daily driver or for cross-country trips' ('promise') which was a part of the contracts," Complaint ¶ 14, at 2; (iv) the "guarantee has been breached because TOH is not 100% satisfied with the buses," Complaint ¶ 15, at 2; and (v) the "promise has been breached [because the] buses were not 'ready to go' on delivery 'whether for daily driver or for cross-country trips,'" Complaint ¶ 16, at 2.

The Complaint thus sets forth that the Defendants made an "affirmation of fact or promise" relating to the two buses when they promised Two Old Hippies that "the buses would be 'ready to go' on delivery whether 'for daily driver or for cross-country trips,'" Complaint ¶ 14, at 2, and guaranteed Two Old Hippies "100% satisfaction with the buses," Complaint ¶ 13, at 2.  Once made, it is plausible that these affirmations became a basis of the bargain, as Two Old Hippies stated in its Complaint.  See Complaint ¶¶ 13, 14, at 2.  In other words, it is plausible that, because the affirmations were made before and in the process of negotiating the sales of the buses, they were made "under such circumstances as to warrant the inference that [they] enter[ed] into the contract

as finally made."  New Mexico Uniform Jury Instruction UJI 13-428, Committee Commentary.[2]

"[T]he presumption is that . . . any affirmation of fact is intended to become a basis of the bargain";

"hence[,] no particular reliance on such statements need be shown in order to weave them into the

fabric of the agreement."  NMSA 1978, § 55-2-313, cmts. 3, 6.  See NMSA 1978, § 55-2-313, cmt.

8 ("What statements of the seller have in the circumstances and in objective judgment become part

of the basis of the bargain?  As indicated above, all of the statements of the seller do so unless good

reason is shown to the contrary.").  Two Old Hippies, therefore, has stated facts alleging the breach

of an express warranty.

### B.      TWO OLD HIPPIES HAS STATED A CLAIM FOR BREACH OF IMPLIED WARRANTY.

The Complaint sufficiently alleges the existence of implied warranties of merchantability and

fitness as to both buses.  N.M.S.A. 1978, § 55-2-315 states:

> Where the seller at the time of contracting has reason to know any particular purpose
> for which the goods are required and that the buyer is relying on the seller's skill or
> judgment to select or furnish suitable goods, there is unless excluded or modified
> under the next section an implied warranty that the goods shall be fit for such
> purpose.

A breach of the implied warranty of merchantability occurs when the goods would not "pass without

objection in the trade under the contract description" or "fit for the ordinary purposes for which such

goods are used."  N.M.S.A. 1978, § 55-2-314(2)(a), (c).  This warranty "applies to sales for use as

well as to sales for resale."  NMSA 1978, § 55-2-314(2)(c), cmt. 1.  "It is not necessary for the buyer

to prove his reliance on the skill or judgment of the seller under implied warranty of

---

[2] The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by
standing committees of the Court establishes a presumption that the instructions are correct
statements of law.  See State v. Wilson, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994).

merchantability." Int'l Paper Co. v. Farrar, 102 N.M. 739, 742, 700 P.2d 642, 645 (1985)(citation

omitted). "New Mexico recognizes that the implied warranties of merchantability and fitness for

a particular purpose are implied by law and are independent of express warranties." Int'l Paper Co.

v. Farrar, 102 N.M. at 742, 700 P.2d at 645. See Salazar v. D.W.B.H., Inc., 144 N.M. 828, 832, 192

P.3d 1205, 1209 (2008)("Unlike express warranties, implied warranties are not bargained for; they

are imposed by law."). "A contract may of course include both a warranty of merchantability and

one of fitness for a particular purpose." NMSA § 55-2-315, cmt. 2. A "particular purpose"

"envisages a specific use by the buyer which is peculiar to the nature of his business . . . . For

example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may

know that a particular pair was selected to be used for climbing mountains." NMSA § 55-2-315,

cmt. 2.

Two Old Hippies' Complaint sets forth the following factual statements relevant to its claims

of the Defendants' breach of implied warranties of merchantability and fitness: (i) in July and

October of 2009, Two Old Hippies contracted to purchase two restored Volkswagen buses from

Catch the Bus, see Complaint ¶¶ 9, 11, at 2; (ii) Two Old Hippies planned to use Bus #1 in its

business and give away bus #2 in a business promotion, see Complaint ¶ 17, at 2; (iii) the

Defendants were informed of Two Old Hippies' intended uses of the buses before the purchase of

the buses, see Complaint ¶ 18, at 3; (iv) after delivery of Bus #1 to Two Old Hippies, Bus #1 was

not "safely operable and TOH determined that Bus # 1 had many serious mechanical and physical

defects," Complaint ¶ 19, at 3; and (v) after delivery of Bus #2 to Two Old Hippies' winning entrant,

the entrant and subsequently Two Old Hippies "determined that Bus # 2 was not operable and had

many serious mechanical and physical defects," Complaint ¶ 21, at 3. The Complaint thus sets forth

-14-

factual allegations stating the existence and breach of implied warranties of merchantability and fitness.

The implied warranty of merchantability applies to any sale of goods by a merchant, which the Defendants admit to being.  See Complaint ¶ 40, at 4; Answer ¶ 40, at 6.  Two Old Hippies has set forth specific factual content indicating alleged deficiencies which would establish a breach of an implied warranty of fitness for a particular purpose under N.M.S.A. 1978, §55-2-315 and merchantability under N.M.S.A. 1978, § 55-2-314(2)(a), (c): that the goods were not fit for the "particular purpose for which" they were sold or "the ordinary purposes for which" vehicles are sold, namely that vehicles sold for driving were not "safely operable and TOH determined that Bus # 1 had many serious mechanical and physical defects," and "that Bus # 2 was not operable and had many serious mechanical and physical defects."  Complaint ¶¶ 19, 21, at 3.  The Court therefore concludes that Two Old Hippies state a claim for breach of implied warranties of merchantability and fitness that is plausible on its face.

Two Old Hippies need not, contrary to the Defendants' contention, allege the specific defects from which the buses suffered.  To establish a breach of a warranty, "a buyer is not required to prove a *specific* defect in the goods."  Salazar v. D.W.B.H., Inc., 144 N.M. at 834, 192 P.3d at 1211 (citation omitted)(emphasis in original).  See Lovington Cattle Feeders, Inc. v. Abbott Labs., 97 N.M. at 568, 642 P.2d at 171 (holding that evidence of buyer's increased incidence of disease among cattle after using seller's vaccine was sufficient to demonstrate defect of vaccine and, thereby, breach of seller's express warranty).  For example, "[i]f the ordinary purpose of the machines was to milk cows, evidence to the effect that the machines could not milk cows without causing disease creates a factual question regarding breach of the warranty of merchantability."  C.E. Alexander &

Sons, Inc. v. DEC Int'l, Inc., 112 N.M. 89, 94, 811 P.2d 899, 904 (1991).  See Arnold v. Ford Motor Co., 90 N.M. 549, 551, 566 P.2d 98, 100 (1977)(affirming the trial court's ruling that the implied warranty was breached based on circumstantial evidence, despite absence of proof of specific defects).  Two Old Hippies' allegations regarding the defective and inoperable nature of the buses as delivered adequately state a claim for breach of the express and implied warranties.

**III.   TWO OLD HIPPIES HAS STATED A CLAIM FOR A VIOLATION OF THE MVDFA -- COUNT III.**

In Count III, Two Old Hippies contends that: (i) the Defendants are a "motor vehicle dealer" under NMSA 1978, § 57-16-3B; (ii) the Defendants committed fraud, as defined in as defined in NMSA 1978, § 57-16-3I, in connection with the sale of the buses to Two Old Hippies, in violation of NMSA 1978, § 57-16-4B and C; and (iii) the Defendants' violations of NMSA 1978, § 57-16-4 damaged Two Old Hippies.  The Defendants contend that Two Old Hippies fails to state a claim under Count III for violation of the MVDFA, because it did not sufficiently plead: (i) that Catch the Bus is a "dealer"; (ii) that Catch the Bus engaged in advertising in connection to the buses; and (iii) that the Defendants made misrepresentations with adequate factual particularity.  Two Old Hippies responds that it has sufficiently alleged facts to support Count III.  The Court agrees that Two Old Hippies has stated a claim under the MVDFA.

The Defendants admit Catch the Bus is a dealer.  See Answer ¶ 44, at 6.  The provisions of NMSA 1978, § 57-16-4B and C address unlawful acts by a "dealer."  NMSA 1978, § 57-16-3B defines a "dealer" as "any person who sells or solicits or advertises the sale of new or used motor vehicles," excluding, among others, "persons making casual sales of their own vehicles duly registered and licensed to them by the state."  NMSA 1978, § 57-16-3B(3).  The Defendants admit to being dealers within the meaning of NMSA 1978, § 57-16-3B.  Paragraph 44 of Two Old

-16-

Hippies' Complaint states: "[T]he CTB Defendants are a 'motor vehicle dealer' pursuant to NMSA 57-16-3-B." Complaint ¶ 44, at 5. In the Defendants' Answer, they admit this allegation. See Answer ¶ 44, at 6 ("Defendants admit the allegations contained in Paragraph 44 of Plaintiff's Complaint."). Thus, despite their contention in their Memorandum that "Plaintiff has failed to set forth specific factual allegations related to the nature of Defendant, Catch the Bus LLC's business from which the Court can infer that Defendant is a 'dealer' within the meaning of the applicable statute," the Defendants are -- and admit to being -- "dealers" under MVDFA.

In the Complaint, Two Old Hippies asserts that the Defendants violated both subsections B and C of NMSA § 57-16-4. These subsections make it unlawful for a dealer to, respectively, "use false, deceptive or misleading advertising in connection with his business," and "willfully defraud any retail buyer to the buyer's damage." The Complaint adequately alleges that the Defendants advertised. "Advertising" is not defined in the MVDFA, but other statutory provisions include oral statements as advertisements. See Organic Commodity Act, NMSA 1978, § 76-22-1A ("'[A]dvertise' means to present a commercial message in any medium, including but not limited to print, radio, television, sign, display, label, tag or oral statement . . . ." (emphasis added)). Two Old Hippies alleges that the Defendants made statements to induce it to purchase the buses, namely that the buses would be "'ready to go' on delivery whether for daily driver or for cross-country trips'" with which Two Old Hippies would be "100%" satisfied are advertisements. Complaint ¶¶ 13, 14, at 2. It is plausible that these statements were advertisement. Regrading pleading misrepresentations, again, Two Old Hippies adequately pled fraud, because the Complaint alleges who said the misrepresentations at issue, what those misrepresentations were, approximately when they were made, and in what context. Consequently, Two Old Hippies states a claim in the

Complaint under the MVDFA.

## IV.   TWO OLD HIPPIES HAS STATED A CLAIM FOR A VIOLATION OF THE UPA -- COUNT IV.

The Defendants contend that Two Old Hippies fails to state a claim under Count IV for violation of the UPA.  Count IV of the Complaint alleges that the Defendants violated N.M.S.A. 1978, §§ 57-12-2, 57-12-6, because they represented that the buses were of a particular standard, quality or grade -- willfully misrepresenting the condition of the buses.  See Complaint ¶ 49, at 5. In support of their contention that Two Old Hippies fails to state a claim under the UPA, the Defendants rely on their earlier arguments that Two Old Hippies did not adequately plead fraud or state with particularity how the buses were deficient.  See Memorandum at 8.  Again, Two Old Hippies adequately pleads fraud, because the Complaint alleges who said the misrepresentations at issue, what those misrepresentations were, approximately when they were made, and in what context.  Additionally, Two Old Hippies states that the buses had "many serious mechanical and physical defects," making the first bus "not safely operable" and the second bus "not operable" at all, Complaint ¶¶ 19, 21, 27, at 3, contrary to the Defendants' alleged representations that the buses were "'ready to go' on delivery," and usable "for daily driver or for cross-country trips," Complaint ¶ 16, at 2.  The Court concludes, therefore that Two Old Hippies, adequately pleads a claim under the UPA, because they allege the Defendants' "willful misrepresentation of the . . . condition of a motor vehicle."  NMSA 1978, § 57-12-6A.[3]

---

[3] In their Motion, the Defendants contend that Two Old Hippies has failed to specifically state items of special damages and the grounds for the assessment of special damages in accordance with rule 9(g), and consequently the Court should dismiss its prayer for special damages.  "Special damages 'are damages that are unusual for the type of claim in question -- that are not the natural damages associated with such a claim.'"  LINC Finance Corp. v. Onwuteaka, 129 F.3d 917, 922 (7th Cir. 1997)(citations omitted).  "Special damages depend on particular circumstances of the case;

## V.   **TWO OLD HIPPIES FAILS TO STATE A CCPA CLAIM -- COUNT V.**

The Defendants contend that Two Old Hippies fails to state a claim under Count V for violation of the CCPA.  The Defendants assert that the Complaint contains no allegations that would put the Defendants on notice that Colorado law applies, that the Complaint does not allege in sufficient specificity the misrepresentations made, or that the alleged misrepresentations affect the public, as the CCPA requires.  In response, Two Old Hippies asserts that Colorado law is applicable, because its operations are based in Colorado, that it has adequately pled the misrepresentations, and that, if both the buses the Defendants sold Two Old Hippies were defective, discovery is likely to reveal that the Defendants have sold other unsafe or inoperable vehicles, implicating the public's interests.

The CCPA is intended to redress wrongs that "significantly impact[ ] the public as actual or potential consumers of the defendant's goods, services, or property."  Hall v. Walter, 969 P.2d 224, 234 (Colo. 1998).  To prove a private cause of action under the CCPA, a plaintiff must show:

_____

general damages, on the other hand, are the ordinary result of the conduct alleged." Weyerhaeuser Co. v. Brantley, 510 F.3d 1256, 1266 (10th Cir. 2007)(citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1310 (3d ed. 2005)).  The Defendants offer no argument in support of this contention in their Memorandum, apparently abandoning this challenge.  Moreover, the Defendants do not state which claim they contend requires Two Old Hippies to plead special damages, and the prayer for relief does not include special damages; Two Old Hippies pray for actual, incidental, and consequential damages, or, in the alternative, statutory treble damages or rescission and refund, and attorneys' fees and costs.  "Rule 9(g) does not mention punitive damages, nor does it define the 'special damages' for which special pleading is required. [The defendant] cites no Fifth Circuit (nor any circuit) precedent to support its position that punitive damages must be pled with specificity." Schexnayder v. Bonfiglio, 167 F. App'x 364, 367 (5th Cir. 2006).  Moreover, Two Old Hippies states how it was damaged with particularity.  See Complaint ¶¶ 10, 12, 23-26, at 2, 3.  Consequently, the Court rejects the Defendants' contention.  If Two Old Hippies has special damages and has not pled them, that omission may bar recovery of special damages down the road; that factor is not, however, a sound basis to dismiss a claim that can be supported, as appears to be the case here, by general compensatory damages alone.

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

Rhino Linings United States v. Rocky Mt. Rhino Lining, 62 P.3d 142, 146-47 (Colo.2003).

> The Colorado Supreme Court has taken "an expansive approach" in interpreting the CCPA.  The court has stated that because of . . . "the strong and sweeping remedial purposes of the CCPA," when "determining whether conduct falls within the purview of the CCPA, it should ordinarily be assumed that the CCPA applies to the conduct."

Warner v. Ford Motor Co., No. 06-cv-02443 JLK/MEH, 2008 WL 4452338, at *7 (D. Colo. Sept. 30, 2008)(citations omitted).  The Supreme Court of Colorado has identified three factors courts consider in determining whether a practice has a sufficient public impact to support a private claim under the CCPA: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future."  Rhino Linings United States v. Rocky Mt. Rhino Lining, 62 P.3d at 149 (quoting Martinez v. Lewis, 969 P.2d 213, 222 (Colo. 1998)).

Two Old Hippies has not adequately pled a claim under the CCPA, because it has not alleged facts that plausibly show that the alleged misrepresentations "significantly impact[ ] the public as actual or potential consumers of the defendant's goods, services, or property."  Hall v. Walter, 969 P.2d at 234.  Under the first Martinez v. Lewis factor, the allegations in the Complaint indicate that the alleged misrepresentations directly affected only the parties.  See Warner v. Ford Motor Co., 2008 WL 4452338, at *14 ("[A] private contractual breach affecting only three individuals did not have a sufficient public impact to violate the CCPA").  The second factor also weighs against the

Court's finding a significant public impact, because the transaction was between businesses. Colorado courts "have implied that it is consumers, rather than private businesses, who are the intended beneficiaries of the Act." U.S. Welding, Inc. v. Burroughs Corp., 615 F. Supp. 554, 555 (D. Colo. 1985)(citing People ex rel. MacFarlane v. Alpert Corp., 660 P.2d 1295, 1297 (Colo. App. 1982)). In United States Welding, Inc. v. Burroughs Corp., the United States District Court of the District to Colorado dismissed a CCPA claim based on a business-to-business transaction:

> In the instant case, there is no indication in the complaint or otherwise that U.S. Welding's lease of a Burroughs' computer system was anything other than a commercial transaction or that Burroughs' alleged fraudulent misrepresentations regarding the system had any affect on consumers generally. Rather, U.S. Welding invokes the Colorado Consumer Protection Act as "an additional remedy to redress a purely private wrong." Under these circumstances it is "beyond doubt that [U.S. Welding] can prove no set of facts in support of [its] claim [under the Act] which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 . . . (1957); see also Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). Accordingly, Burroughs' motion to dismiss this claim is granted.

615 F. Supp. at 555-56 (alteration in original). The third factor also weighs against Two Old Hippies, because it does not allege that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future. While, in its response, Two Old Hippies contends that, because both the buses the Defendants sold Two Old Hippies were defective, discovery is likely to reveal that the Defendants have sold other unsafe or inoperable vehicles, the Complaint does not allege that the alleged misrepresentations were made to any parties other than Two Old Hippies. The Court concludes therefore that Two Old Hippies has not stated a claim under the CCPA, because they have not pled facts showing the alleged misrepresentations "significantly impact[ ] the public as actual or potential consumers of the defendant's goods, services, or property." Hall v. Walter, 969 P.2d at 234. If discovery uncovers evidence that will support, under rule 11, an allegation of impact, Two Old Hippies may move to amend its complaint.

**VI.     TWO OLD HIPPIES FAILS TO STATE CLAIMS AGAINST THE INDIVIDUAL
        DEFENDANTS.**

The Defendants contend that Two Old Hippies fails to state claims against the Individual

Defendants.  The Defendants assert that the Complaint states only that the Individual Defendants

owned Catch the Bus and did not provide a basis for establishing individual liability.  Two Old

Hippies responds that "[t]he Macks are not only the owners of CTB, but were also deeply involved

in the negotiations of the contracts at issue in this case as set forth in the Complaint."  Response at

12.  A review of the Complaint reveals, however, that Two Old Hippies does not adequately

differentiate between the Defendants in its allegations to show that the Individual Defendants

participated in negotiating the contacts in issue.  Two Old Hippies, therefore, does not establish

individual liability for the Individual Defendants under its contract claims.

Under N.M.S.A. 1978, § 53-19-14, a member of a limited liability company is not a proper

party to a proceeding by or against the limited liability company solely by reason of being a member

of the limited liability company.  N.M.S.A. 1978, § 53-19-13 provides that "the debts, obligations

and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be

solely the debts, obligations and liabilities of the limited liability company."  "A corporation can act

only through its officers and employees, and any act or omission of an officer or an employee of a

corporation, within the scope or course of his or her employment, is an act or omission of the

corporation."  Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 437, 872 P. 2d 852, 855

(1994)(finding no personal liability for "claims against the individual defendants were solely claims

based on actions taken within the scope of their employment").

It is a basic tenet of corporate law that a corporation is a legal entity, separate from
its shareholders, directors, and officers.  Eastern Navajo Indus., Inc. v. Bureau of
Revenue, 89 N.M. 369, 373, 552 P.2d 805, 809 (Ct. App. 1976).  Thus, the

shareholders, directors and officers are not personally liable for the acts and obligations of the corporation. Corporate directors cannot be held vicariously liable for the corporation's torts merely by virtue of the office they hold. <u>Taylor v. Alston</u>, 79 N.M. 643, 644, 447 P.2d 523, 524 (Ct. App. 1968). However, if an officer or director directs or actively participates in the commission of the tortious act of the corporation, he will be liable, along with the corporation. <u>Id.</u> Thus, if the officer or director directed, controlled, approved or ratified the activity that led to the injury, he or she can be held personally liable. <u>See</u> <u>Lobato v. Pay Less Drug Stores, Inc.</u>, 261 F.2d 406, 408-09 (10th Cir. 1958)(stating the general rule on corporate director liability in a New Mexico case).

<u>Stinson v. Berry</u>, 123 N.M. 482, 486-87, 943 P. 2d 129, 133-34 (Ct. App. 1997). "[O]fficers or employees of corporations can be held personally liable when they commit intentional torts." <u>Bourgeous v. Horizon Healthcare Corp.</u>, 117 N.M. at 437, 872 P. 2d at 855 (citing <u>Bass v. Happy Rest, Inc.</u>, 507 N.W.2d 317, 320 (S.D. 1993). "Thus, for example, if [a plaintiff] had presented evidence of malicious, willful, or wanton conduct, she might have had a claim against the individual defendants . . . ." <u>Bourgeous v. Horizon Healthcare Corp.</u>, 117 N.M. at 437, 872 P. 2d at 855 (citations omitted).

Officers are generally not liable for contract violations of a corporation. <u>See</u> <u>Kreischer v. Armijo</u>, 118 N.M. 671, 673, 884 P.2d 827, 829 (Ct. App. 1994). "Courts have long followed the rule that '[t]he difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law.'" <u>Kreischer v. Armijo</u>, 118 N.M. at 673, 884 P.2d at 829 (quoting <u>Tamarac Dev. Co. v. Delamater, Freund & Assoc., P.A.</u>, 675 P.2d 361, 363 (Kan. 1984). In <u>Kreischer v. Armijo</u>, the Court of Appeals for New Mexico determined that an agent was not individually liable for claims of "unfair trade practices, gross negligence, and fraudulent misrepresentation," because, "although [the] causes of action are couched in tort language, the gravamen of the complaint was essentially the failure of Defendant to complete the construction work in accordance with the

-23-

contract." 118 N.M. at 673, 884 P.2d at 829.

Similarly, Two Old Hippies' contract claims against the Individual Defendants fail as a matter of law. A number of the Two Old Hippies' claims expressly sound in contract, namely, Two Old Hippies' claims against the Individual Defendants for breach of contract -- Count I; breach of warranty -- Count II; and rescission -- Count VII. The Defendants contend that Two Old Hippies' MVDFA claim -- Count III, and UPA claim -- Count IV, also sound in contract and should be dismissed.[4] This Court has previously held that "[a] UPA claim is more like a tort claim than a contract claim." Carl Kelley Const. LLC v. Danco Technologies, 656 F. Supp. 2d 1323, 1339 (D.N.M. 2009)(Browning, J.)(citing Pedroza v. Lomas Auto Mall, Inc., 625 F. Supp. 2d 1156, 1161-62 (D.N.M. 2009)(Browning, J.)). In Kreischer v. Armijo, the Court of Appeals for New Mexico affirmed the trial court's dismissal of a UPA claim, observing that the plaintiff's allegations "sound[ed] in contract rather than in tort," and thus did not state a claim under the UPA. 118 N.M. at 674, 884 P.2d at 830. Moreover, while the UPA and MVDFA claims may involve conduct that is also relevant to a contractual claim, the claims do not bring a suit on the contract, but a suit under a causes of action that New Mexico's legislature has enacted for allegedly unfair trade practices and automobile dealers' unlawful acts -- "violation[s] of . . . dut[ies] imposed by law.'" Kreischer v. Armijo, 118 N.M. at 673, 884 P.2d at 829. Consequently, the UPA and MVDFA claims are not barred as contract claims.

While the limited liability shield does not protect the Individual Defendants against the

---

[4] The Defendants further contend that Two Old Hippies CCPA claim -- Count V -- sounds in contract. Because the Court dismisses this claim against all Defendants, because Two Old Hippies did not set forth facts showing that the alleged misrepresentations affect the public, as the CCPA requires, the Court need not consider whether a CCPA claim sounds in tort or contract.

remaining claims, those claims fail for another reason.  Two Old Hippies does not set forth facts

showing G. Mack or F. Mack are the individually liable.  The Complaint alleges that Catch the Bus

"is wholly owned by Gary Mack and Fallon Mack," Complaint ¶ 7, at 2, and that they "are citizens

of New Mexico," Complaint ¶ 8, at 2.  These allegations do not make the Individual Defendants

proper parties to this suit under N.M.S.A. 1978, §53-19-14.  The Complaint otherwise makes no

specific mention of the Individual Defendants, attributing all actions to the Defendants collectively,

failing to identify, within each count, the particular Defendant alleged to have acted.  In Robbins v.

Oklahoma, 519 F. 3d 1242 (10th Cir. 2008), the Tenth Circuit granted a motion to dismiss for failure

to provide fair notice under rule 8 in part because the complaint failed to differentiate among the

defendants, alleging instead violations by "the defendants":

> We reiterate that "[c]ontext matters in notice pleading. Fair notice under Rule 8(a)(2)
> depends on the type of case."  Phillips [v. County of Allegheny, 515 F.3d 224,
> 239-40 (3d Cir. 2008)]. In § 1983 cases, defendants often include the government
> agency and a number of government actors sued in their individual capacities.
> Therefore it is particularly important in such circumstances that the complaint make
> clear exactly who is alleged to have done what to whom, to provide each individual
> with fair notice as to the basis of the claims against him or her, as distinguished from
> collective allegations against the state.  See Twombly, 127 S. Ct. at 1970-71 n.10.

519 F. 3d at 1249-50; Smith v. United States, 561 F.3d 1090, 1104 (10th Cir. 2009)(quoting Robbins

v. Oklahoma, 519 F. 3d at 1249-50).  See Bryson v. Gonzales, 534 F.3d 1282, 1290 (10th Cir.

2008)("Finally, there are also some conclusory allegations that simply name the 'Defendants'

generically . . . .  But none of these allegations are helpful in figuring out what facts Mr. Bryson

means to allege about Mr. Gonzales's conduct" (quoting Robbins v. Oklahoma, 519 F. 3d at 1249-

50)); N.M. ex rel. Foy v. Vanderbilt Capital Advisors, LLC, No. CIV 09-0178 RB/MEH, 2009 WL

3672921, at *4 (D.N.M. 2009)(Brack, J.)("The Tenth Circuit has admonished all plaintiffs that, if

a complaint uses 'either the collective term "Defendants" . . . ,' the Court will not speculate as to

what acts a particular defendant is alleged to have committed" (citing <u>Robbins v. Oklahoma</u>, 519

F. 3d at 1250)).  Like a § 1983 case, where "defendants often include the government agency and

a number of government actors sued in their individual capacities," this case involves a company

and its agents sued in their individual capacities.[5]  Consequently, this suit implicates the same need

_____

[5] The Court has previously addressed the related subject of "group pleading" under the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, codified at 15 U.S.C. § 78u-4 ("PSLRA").  <u>See</u> <u>In re Thornburg Mortg., Inc. Secs. Litig.</u>, 695 F. Supp. 2d 1165, 1196-1202 (D.N.M. 2010)(Browning, J.); <u>Lane v. Page</u>, 581 F. Supp. 2d 1094, 1117-18 (D.N.M. 2008)(Browning, J.).  "The group pleading doctrine is a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations."  <u>Winer Family Tr. v. Queen</u>, 503 F.3d 319, 335 (3d Cir. 2007).  "Instead of being required to plead that a defendant actually made, authored or approved an offending statement in a corporate communication, the 'group pleading' doctrine in its broadest form allows unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles."  <u>Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.</u>  365 F.3d 353, 363 (5th Cir. 2004).  In <u>In re Thornburg Mortgage, Inc. Securities Litigation</u>, the Court considered whether the PLSRA abolished the group-pleading doctrine.  <u>See</u> 695 F. Supp. 2d 1165, 1196-1202.  The Court interpreted the "PSLRA's particularity requirement . . . to foreclose plaintiffs from pleading that facts about the defendants, as a group, are sufficient to give rise to a strong inference of scienter."  <u>In re Thornburg Mortg., Inc. Secs. Litig.</u>, 695 F. Supp. 2d at 1199 (citing 15 U.S.C. § 78u-4(b)(2) as dictating that, where the plaintiff must prove a particular state of mind, "the complaint shall . . . state with <u>particularity</u> facts giving rise to a strong inference that <u>the defendant</u> acted with the required state of mind" (emphasis added).  The Court stated, however, that it "is not prepared to judicially declare that the PSLRA forbids all instances of group pleading," and that "group pleading may still be permissible and useful when pleading conduct and omissions," but "plaintiffs run a substantial risk when they rely on group pleading to show scienter."  <u>In re Thornburg Mortg., Inc. Secs. Litig.</u>, 695 F. Supp. 2d at 1199, 1200.  "The Court . . . concluded that the group-pleading doctrine did not survive unscathed the passage of the PSLRA," and that "the only statements that the Court can properly attribute to a particular Defendant are those that he or she said, those in documents that he or she signed, and those in documents about which particular factual allegations aver his or her direct involvement."  <u>In re Thornburg Mortg., Inc. Secs. Litig.</u>, 695 F. Supp. 2d at 1212.  While the PLSRA does not govern this case, and the Court does not address group-published documents in this case, the Court notes that its present order is consistent with the Court's opinion in <u>In re Thornburg Mortg., Inc. Secs. Litig.</u>, because both opinions require that plaintiffs plead defendant-specific allegations when a claim requires that an individual defendants perform certain actions -- act with scienter under the PSLRA or personally participate in tortious acts under New Mexico's limited liable company laws.

to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her," particularly when the Individual Defendants liability turns on their individual participation in the alleged activities.  Because the Complaint does not differentiate among the Individual Defendants, the Court dismisses all claims against them.  While attributing actions to all defendants in common may have sufficed under the notice pleading regime that governed before Bell Atl. Corp. v. Twombly, see Conley v. Gibson, 355 U.S. 41, 45-46 (1957)("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."), under the pleading standard announced in Bell Atl. Corp. v. Twombly, a plaintiff must "state a claim to relief that is plausible on its face," 550 U.S. at 570, by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Attributing actions to the Defendants generally may not allow the Court to say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim"; failing to differentiate between the Defendants may not, however, allow the Court to determine if the allegations show that all Defendants are liable for the alleged misconduct.  Without specifying which Individual Defendants engaged in which alleged action, the Court is unable to discern whether the Individual Defendants "directed, controlled, approved or ratified the activit[ies]," such that the Court can plausibly infer that they "can be held personally liable."  Stinson v. Berry, 123 N.M. 482, 486-87, 943 P. 2d 129, 133-34 (citing Lobato v. Pay Less Drug Stores, Inc., 261 F.2d at 408-09).  While this uncertainty does not defeat Two Old Hippies' claims against Catch the Bus, which is liable for the actions of its agents, it defeats Two Old Hippies' claims against the Individual Defendants.  See Robbins v. Oklahoma,

519 F. 3d at 1249-50.

**IT IS ORDERED** that: (i) the Defendants' Motion to Dismiss, filed June 23, 2010 (Doc. 7), is granted in part and denied in part; (ii) the Court dismisses all claims against Defendants Gary Mack and Fallon Mack; and (iii) the Court dismisses Plaintiff Two Old Hippies' claim under the Colorado Consumer Protection Act, C.R.S. §§ 6-1-101 through 6-1-115 -- Count V.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Rebecca L. Avitia
Thomas P Gulley
Bannerman & Johnson, PA
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Catch the Bus, LLC
Alamogordo, New Mexico

 *Defendant pro se*

Gary Mack
Alamogordo, New Mexico

 *Defendant pro se*

Fallon Mack
Alamogordo, New Mexico

 *Defendant pro se*